IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHMAN, BERENBAUM & ASSOCIATES, L.L.C.; CHARLES I. RICHMAN; BLAKE L. BERENBAUM and ELLIS COOK, | ) ) ) ) ) | |
| Plaintiffs | ) ) | No.   02-CV-3195 |
| vs. | ) ) | |
| CAROLINA CASUALTY INSURANCE COMPANY; and REUBEN KLUGMAN, INDIVIDUALLY AND AS TRUSTEE OF THE REUBEN KLUGMAN TRUST, | ) ) ) ) ) | |
| Defendants | ) | |

**CAROLINA'S REPLY TO PLAINTIFF'S RESPONSE TO
CAROLINA'S MOTION FOR SUMMARY JUDGMENT**

Defendant/Counter-Plaintiff, Carolina Casualty Insurance Company ("Carolina"), by its undersigned counsel, for its Reply To Plaintiff's Response to Carolina's Motion for Summary Judgment, hereby states as follows:

As explained below, Richman, Berenbaum's contentions that their alleged subjective belief that no actual claim would be made against them by Reuben Klugman serve to defeat Carolina's motion are irrelevant, and do not obviate Carolina's coverage defenses, given the language contained in the Carolina Policy, and the overwhelming authority upholding an objective standard of interpretation with respect to such policy language. Carolina set forth undisputed facts that demonstrate that any reasonable attorney could have foreseen the possibility that Klugman might be expected to make a claim against them. Carolina is therefore entitled to judgment that the Klugman claim is outside the scope of coverage provided by the Carolina Policy.

Further, Richman, Berenbaum's attempts to assert "unclean hands" as a defense to Carolina's entitlement to relief must also fail as a matter of law. First, Richman, Berenbaum is precluded from asserting any affirmative defenses to Carolina's Counterclaim, given that Richman, Berenbaum failed to answer Carolina's counterclaim, or to previously assert "unclean hands" in any pleading. Richman, Berenbaum also failed to propound its disclosures mandated by Fed.R.Civ.P. 26, which would have disclosed Richman, Berenbaum's witnesses, and/or its legal position regarding the defense. Richman, Berenbaum's assertion of this defense in response to a summary judgment motion, and subsequent to expiration of the discovery period, is prejudicial to Carolina and should preclude their assertion of such defenses at this stage.

Likewise, the uncontroverted evidence in this case, and the legal standards set forth by Pennsylvania courts, demonstrate that Richman, Berenbaum has failed to show that Carolina committed the requisite conduct necessary to invoke "unclean hands" or to otherwise support a waiver or estoppel claim under Pennsylvania law. Carolina is therefore entitled to judgment in its favor.

## II.   ARGUMENT

### A.   The Klugman Claim Is Not Within The Scope Of Coverage Provided By The Carolina Policy As A Matter of Law

In response to Carolina's Counterclaim, filed on May 30, 2002, Richman, Berenbaum failed to file any answer, or other affirmative defenses[1]. Further, Richman, Berenbaum failed to

---

[1] Richman, Berenbaum failed to respond to Carolina's counterclaim, either by way of answer, or affirmative defenses. To date, Richman, Berenbaum have not made any motion, or otherwise explained their complete failure to answer. Under Fed.R.Civ.P.8(d), a counterclaim which is not contested must be taken as confessed and the material

comply with the disclosures mandated by Fed.R.Civ.P. 26. Thus, prior to the close of discovery, and Carolina's filing of this motion, Richman, Berenbaum never provided Carolina or this Court with the required information regarding its legal position, or named any witnesses or other evidence in support of a defense to Carolina's Counterclaim.

Presently, to avoid the clear conclusion that the Klugman claim is not covered under the Carolina Policy, Richman, Berenbaum now argues that, although they recognized the potential claim, they subjectively believed that Klugman would not make a claim. Richman, Berenbaum bases this upon purported conversations between Ellis Cook and Klugman and/or his counsel (opposing counsel in the underlying case), wherein Klugman allegedly advised Cook that the notice of potential claim letter sent to Richman, Berenbaum was merely an attempt "to get Ellis Cook's attention with regard to the Kelsey/Klugman matter." *See Richman, Berenbaum Statement Of Facts,* &8. However, even if the affidavits are considered by this Court[2], these arguments are defeated by the plain language of the Exclusion which requires only that Richman,

---

allegations thereof accepted as true. *Skoczylas v. Atlantic Credit & Finance, Inc.*, no. CIVA00-5412, 2002 WL 55298, *6-7 (E.D.Pa. January 15, 2002). In fact, Richman, Berenbaum's failure to answer the counterclaim may, in itself, entitle Carolina to judgment in its favor. *Id.*

[2]Carolina is filing a separate motion to strike the affidavits on two grounds. First, Richman, Berenbaum failed to comply with Fed.R.Civ.P. 26 by disclosing its potential witnesses, which should preclude Richman, Berenbaum from offering such testimony. *See Fed.R.Civ.P. 37(c)*. *See also Protocomm Corp. v. Novell Advanced Svcs.*, no. CIV.A. 93-0518, 1997 WL 83731, *7 (E.D.Pa. Feb. 26, 1997). Second, among other evidentiary objections, the affidavits contains inadmissible hearsay, as they are offered to prove the truth of alleged out of court statements made by Klugman.

Berenbaum objectively foresee a potential claim, and renders Cook's purported subjective beliefs irrelevant.

Based on the policy language, Pennsylvania federal courts, and other courts, have already rejected Richman, Berenbaum's argument, and have applied an objective standard. As recognized by courts addressing this issue, accepting Richman, Berenbaum's contentions would have the effect of eviscerating the policy language. *See, e.g., Mt. Airy Ins. Co. v. Thomas*, 954 F.Supp. 1073, 1079 (W.D.Pa. 1997), *aff'd*, 149 F.3d 1165 (3rd Cir. 1998) (A . . . such subjective information could too easily be related after the fact to excuse an attorney's failure to report known potential claims"). Thus, even if Richman, Berenbaum's belated, and inadmissible affidavits were considered by this Court in deciding Carolina's motion for summary judgment, the testimony does not avoid the conclusion that the Klugman claim is not within the scope of coverage provided by the Carolina Policy.

The material facts are undisputed,[3] and demonstrate Richman, Berenbaum's notice of the potential claim. Cook knew, prior to inception of the Carolina Policy, that his client was sued for allegedly entering into a criminally usurious transaction under Florida law. Cook further knew that he had provided legal advice and consultation with regard to the transactions, and had prepared the subject lease agreements. Cook further admittedly knew, in April of 1999, that Judge Leonard Fleet entered summary judgment against his client, holding that the lease was criminally usurious. As a result, Cook's client lost principal, and any future returns on the investment. Thus, in April of 1999, Cook knew he had committed an act, error or omission, i.e.,

---

[3] As stated, Richman, Berenbaum failed to file any answer to Carolina's Counterclaim. Accordingly, all assertions contained therein are deemed admitted. *Fed.R.Civ.P. 8.*

breach of duty, that resulted in ascertainable damages to his client. *See Carolina Counterclaim.* In fact, in Richman, Berenbaum's Statement of Facts contained in their Response to Carolina's motion, Richman, Berenbaum again admit that they had notice of facts which could support a legal malpractice claim prior to inception of the Carolina Policy. *See Richman, Berenbaum Statement of Facts,* &4-6.

Cook also admittedly received a letter from Klugman notifying Cook of a potential claim of professional negligence, and identifying specific errors by Cook. *See Carolina Counterclaim,* &11; *Ellis Cook Affidavit,* &4. Accordingly, on this date, Cook was undoubtedly, and admittedly aware of a potential claim against him. *See, e.g., Mt. Airy Ins. Co. v. Klatsky & Klatsky*, no. CIV.96-1231, 1997 WL 235131 (D.N.J. January 28, 1997) (finding receipt of notice of potential claim constituted objective knowledge of potential claim as a matter of law). Despite this letter, and Cook's knowledge, neither Cook, nor Richman, Berenbaum, ever reported this potential claim to any insurance carrier. *Carolina Counterclaim,* &13.

In response to Carolina's motion, Richman, Berenbaum argues only that certain subjective facts may have colored Richman, Berenbaum's view of the likelihood that Klugman would have actually filed a claim. Specifically, Cook alleges that he was told by Klugman[4] and his counsel that the letter, although stating it was a notice of potential claim, was not a claim, but a "vehicle" to insure his presence at a mediation of the underlying *Kelsey v. Klugman* matter. *Affidavit,* &5. Cook further alleges that he *believed* that Klugman's settlement with Kelsey (and

---

[4]Richman, Berenbaum has not submitted any affidavit from Klugman to verify his alleged statements, and has indicated that Klugman was recently (in February of 2003) rendered incompetent to testify regarding these alleged conversations. Richman, Berenbaum instead offers inadmissible testimony from third parties to attempt to prove that Klugman did not intend to file a claim against Cook at the time he sent the notice of potential claim letter.

not Cook or Richman, Berenbaum) precluded any claim against him under Florida law. *Affidavit*, &7-10), and that Klugman advised him that any such claim was abandoned. *Affidavit, &8.*. Strangely, Cook also argues that Klugman could not have sued Cook <u>at that time</u> because any legal malpractice suit would have been premature, thus apparently arguing that Richman, Berenbaum could have foreseen a potential claim, but that they would not have expected it to be filed at that time. *Affidavit, &9.*

First, even if such testimony were admissible, it is irrelevant whether Cook was allegedly advised by Klugman that Klugman did not intend to actually file a suit, or that Klugman intended the letter to be merely a "vehicle" to obtain Cook's continued participation in resolution of the matter. What is significant is that Cook was aware, prior to policy inception, that he breached a duty to Klugman, and that Klugman had suffered damages. Whether Klugman and his counsel realized it or not[5], any reasonable attorney, on notice of these facts, could have foreseen that these circumstances *might* be the basis of a future claim. As such, Cook's belief that Klugman's settlement with Kelsey somehow negated damages and eliminated the possibility of a claim is both erroneous, and fails to eliminate the objective possibility of a potential claim. *See, e.g., Mt. Airy Ins. Co. v. Thomas,* 954 F.Supp. 1073 (W.D.Pa. 1997), *aff'd,* 149 F.3d 1165 (3rd Cir. 1998);

---

[5]In Reed Bryan's affidavit, comprised mainly of inadmissible testimony, Bryan contends that he believed that Klugman intended the potential claim letter only as a "wake up call" for Cook, and not an actual notice of claim. *See, Affidavit of Reed Bryan, Esq, &6, 7*. Bryan further states that he himself was unaware that Klugman wanted to pursue a claim until mid December of 1999 which, incidentally, also predates inception of the Carolina Policy in January of 2001. *Affidavit, &10.*

Of course, just as Cook's subjective beliefs regarding the likelihood that Klugman would actually sue are irrelevant, so too are Klugman's counsel's subjective beliefs and impressions. The only relevant inquiry is whether a reasonable attorney, on notice of his acts, errors and/or omissions, could have foreseen that his conduct *might* be the basis of a claim.

*Coregis Ins. Co. v. Wheeler*, 24 F.Supp.2d 475 (E.D.Pa. 1998); *Coregis Ins. Co. v. Baratta & Fenerty*, 264 F.3d 302 (3rd Cir. 2001).

In *Thomas*, the insured lawyer also argued that, based on his conversation with his client, he did not believe his client intended to file a claim. *Id.* at 1076. In rejecting this argument, the *Thomas* court distinguished between actual *facts* (such as the summary judgment ruling), which facts, when viewed by a reasonable person, could give rise to a claim of malpractice, and *impressions* which lead the attorney to believe that the client will not pursue a claim for malpractice. *Id.* at 1079. Noting that such subjective information could too easily be related after the fact to excuse an attorney's failure to report known potential claims, the Court rejected the insured's argument and stated:

> This subjective impression or belief of the attorney, based on his perceived relationship with the client or otherwise, as to whether the client will actually pursue a malpractice claim against him falls into the second category. It is this second category of subjective belief or impression that we believe the Pennsylvania Supreme Court would reject.

*Id.* at 1079.

Likewise, in *Wheeler*, the insured attorney had failed to file one of his client's claims within the statute of limitations period. After discussing the error with his client, Wheeler agreed to reduce his fee as compensation for the mistake. However, Wheeler did not obtain a release. Wheeler did not disclose the potential claim on this policy application, or otherwise report the matter to his insurer. Later, after inception of the policy, the client sued Wheeler for malpractice.

The court rejected Wheeler's argument that he believed the apparent "settlement" was an indication that his client would not sue him. The court relied upon Wheeler's attempt to settle the matter with his client, and Wheeler's knowledge that he had no enforceable release, in

concluding as a matter of law that a reasonable person in Wheeler's position would have foreseen that his conduct might be expected to be the basis of a claim or suit.  *Wheeler*, 24 F.Supp. at 479-80.  *See also Brownstein & Washko v. Westport Ins. Corp.*, No. CIV.A.01-4026, 2002 WL 1745910 (E.D.Pa. July 24, 2002) (finding insured's claim that he "believed" he had been cleared of the allegations against him at court hearing to be irrelevant to the objective inquiry necessitated by the policy language).  *See also McCollum*, 1997 WL 128132 (M.D.Fla. 1997) (rejecting insured's argument that she did not believe that her client would sue her because they had an agreement as to how the case would be pled and stating; ". . . if [the insured] . . . knew of a potential claim, she had the duty to disclose its circumstances to [the insurer], regardless of whether she believed the claim had merit or not").

  Here, as in *Thomas* and *Wheeler*, Richman, Berenbaum was admittedly aware of circumstances that might be the basis of a future claim.  The fact that they did not believe that Klugman would actually pursue the claim, based upon conversations with Klugman or otherwise, does not negate the possibility of such claim.   Based upon the objective standard, as set forth in *Thomas* and *Wheeler*, this entitles Carolina to judgment as a matter of law.

  Moreover, the fact that the Klugman malpractice claim might be defensible is also irrelevant.  Carolina need not prove that a malpractice claim was likely, or that the malpractice claim will ultimately be successful.  Rather, the Policy plainly states that it does not apply if any  Insured is aware, prior to policy inception, of any acts, errors, omissions or circumstances, which <u>might</u>  result in a claim. Accordingly, the claim need not be "likely" nor certain, it need only be possible.  *See, e g.,   Thomas; Baratta & Fenerty;  Bankers Trust Co. v. Old Republic Ins. Co.*, no. 87C7853, 1993 WL 311787, *7 (N.D.Ill. Aug. 10, 1993) (wherein the court noted

that similar language applied where there were any facts that a reasonable person "might" reasonably expect to result in a claim, even if that reasonable person also might reasonably believe that a claim was unlikely).

The Third Circuit correctly rejected a similar argument in *Baratta & Fenerty*. In *Baratta*, the insured filed a medical malpractice action on behalf of his client. The case was later dismissed for inactivity and, despite the insured's appeals, the dismissal was affirmed. Like Hlavinka, the insured contended that he could not have foreseen a potential claim because, in part, the two year statute of limitations had run on the claim by the time the policy incepted.

In rejecting his argument, the court noted that both the "discovery rule," and the fact that limitations periods are tolled during a period of concealment by attorney, renders the statute of limitations issue an open question of fact. Given the uncertainty, "in our view, a reasonable attorney in [the insured's] position could not have been certain, and thus should not have assumed, that the limitations period had expired as matter of law. Rather, a reasonable attorney would have foreseen that there *might* be the basis for a claim because the statute of limitations may have been tolled beyond [the two year date] under the discovery rule." 264 F.3d at 307. *See also Tewell, Thorpe, & Findlay, Inc. v. Continental Cas. Ins. Co.*, 64 Wash.App. 571, 578, 825 P.2d 724 (1992) (rejecting insured's argument that dismissal of underlying claim defeated prior notice argument; he fact that the claim was dismissed does not render the claim frivolous and, more important,, the insurer would have had an obligation to defend a non-excluded claim, regardless of its merit).

In this case, Cook's own personal belief, albeit erroneous, that Klugman was precluded from suing him because of the underlying settlement also failed to negate the possibility that a

claim might be made against him. In fact, Klugman did sue, the *Klugman v. Richman, Berenbaum* claim is presently pending, and judgment has not been obtained in Richman, Berenbaum's favor. As in *Baratta*, no reasonable attorney could have assumed that a claim could not be made against him, and the fact that Richman, Berenbaum might have potential defenses to the claim, does not negate the applicability of the policy language. The defensibility of the claim, which must still be defended by Carolina, is not relevant to the analysis of whether such claim might be made.

Contrary to Richman, Berenbaum's assertions, it does not matter whether Klugman ever told Richman, Berenbaum that he would sue them, or whether Richman, Berenbaum believed the claim to be ultimately defensible. Richman, Berenbaum knew that Cook erred in his legal advice regarding the leases, and they knew that Klugman suffered damages as a result. The parties do not dispute these facts, nor is there any dispute regarding Richman, Berenbaum's awareness of these facts. The risk analysis concerning the likelihood of an actual claim, and the decision as to whether it issues insurance, belongs to the insurer, and not Richman, Berenbaum, which is the reason the policy utilizes objective language. *See, e.g., Thomas*. As it is undisputed that Richman, Berenbaum were aware that Cook breached a professional duty, and that his breach of duty caused monetary loss to his client, no rational juror could find that a reasonable attorney in Richman, Berenbaum's position could not have foreseen the possibility that Klugman might later make a claim against him. *See, e.g., Thomas; Baratta; Wheeler*.

In short, regardless of what comfort an insured may take in representations by a client that he or she will not sue, or a simple belief that the client does not intend to bring a lawsuit for legal malpractice, a legal malpractice claim is still possible unless the legal malpractice claim

has been compromised by enforceable settlement and release, or the statute of limitations has expired. For this reason, Carolina requires all its insured to report all circumstances that might result in claims, regardless of their likelihood, or merit. Carolina frames its inquiry in objective language to eliminate the situation here -- where an insured is apparently unable, or unwilling to understand the ramifications of his or her conduct. In this case, none of Richman, Berenbaum's assertions, relied upon in opposition to Carolina's motion, ever controverted their knowledge of these circumstances, or eliminated the potential that Klugman might be expected to make a claim against Richman, Berenbaum.

      **B.**    **Carolina Is Not Precluded From Obtaining Relief By Reason Of The "Unclean Hands" Doctrine**

            **1.**    **Richman, Berenbaum Are Precluded From First Asserting Unclean Hands As An Affirmative Defense At This Stage In This Litigation**

Richman, Berenbaum should be precluded from first asserting "unclean hands" as an affirmative defense to Carolina's Counterclaim at this stage in the litigation because Richman, Berenbaum have failed to comply with Fed.R.Civ.P.8(c), and Fed.R.Civ.P. 26.

Carolina filed its Counterclaim on May 30, 2002. Richman, Berenbaum failed to file any answer to the Counterclaim, or otherwise assert any affirmative defenses. Likewise, Richman, Berenbaum also failed to comply with Fed.R.Civ.P. 26, by asserting its legal defenses, and/or providing notice of the documents or other evidence it intended to submit as a defense to Carolina's counterclaim, and conducted no discovery. Moreover, even after Carolina pointed out this failure in its principal motion for summary judgment, filed on March 14, 2003, to date, Richman, Berenbaum has made no motion, or otherwise offered any excuse for its failures to

comply with the federal rules.

Failure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense. Fed.R.Civ.P. 8(c). Courts have granted leave to amend only where the opposing party will not be prejudiced, based on Fed.R.Civ.P. 15. *See Charpentier v. Godsil*, 937 F.2d 859, 863-64 (3rd Cir. 1991). However, in this case, even to this day, Richman, Berenbaum have not filed a motion for leave to assert affirmative defenses and, therefore, Fed.R.Civ.P. 15(a) is not applicable.

Of course, here, unlike in *Charpentier,* Carolina would be prejudiced. *See, e.g., Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1374 (3rd Cir. 1993) (raising affirmative defenses for the first time in a motion for summary judgment is inappropriate and should be disallowed where the facts underlying the defenses are in dispute and the opposing party would be prejudiced by the raising of the defenses). Richman, Berenbaum failed to provide Carolina with notice of any defenses to its counterclaim until April 11, 2003, albeit improperly, by way of Richman, Berenbaum's response to Carolina's motion for summary judgment. Discovery closed in this case on February 28, 2003, and the summary judgment motion deadline was March 14, 2003. Therefore, assuming that Richman, Berenbaum's defense created any issue of fact (which Carolina contends it does not), Carolina would be precluded from obtaining any discovery on this issue, or otherwise preparing for trial, which is presently scheduled for June of 2003. Accordingly, Carolina submits that Richman, Berenbaum should be precluded from asserting any affirmative defenses at this late stage in the litigation, pursuant to Fed.R.Civ.P. 8.

    **2.**    **Even If Not Precluded From Untimely Raising An Affirmative Defense, Richman, Berenbaum Have Failed To Meet Their Burden Of Demonstrating "Unclean Hands"**

Richman, Berenbaum cannot invoke the doctrine of "unclean hands" in this case to attempt to defeat Carolina's entitlement to judgment, based upon "equitable" relief that is otherwise unavailable to Richman, Berenbaum under Pennsylvania law.  First, Carolina's counterclaim is based upon statutory authority, rendering it an action at law to which equitable defenses are not available.  Moreover, Carolina has not acted immorally, illegally, fraudulently, or unconscionably in this case and, therefore, does not have "unclean hands."

The doctrine of "unclean hands" is inapplicable because Carolina's counterclaim is based on the Declaratory Judgment Act, as opposed to any equitable relief.  In this action, Carolina seeks only a determination of the parties' respective legal rights and obligations.  Accordingly, the action is one at law, as opposed to an action in equity.

Regardless, Carolina has certainly not committed the type of illegal, immoral, fraudulent or unconscionable conduct required to invoke the "unclean hands" doctrine.  Carolina has done nothing improper, and Defendants have set forth no evidence that Carolina has conducted itself so as to offend the moral sensibilities of the judge, or that Carolina is otherwise tainted with iniquity or bad faith relative to the matter in which it seeks relief[6].  See *Lucey v. Workmen's*

---

[6]Richman, Berenbaum makes the ridiculous and completely unfounded assertion in its brief that Carolina waited for Reuben Klugman's dementia to reach a point where he became mentally incapacitated, so as to avoid taking Klugman's deposition.  This statement should be stricken, given that it is unsupported by any evidence and

*Compensation Appeal Board*, 557 Pa. 272, 279, 732 A.2d 1201 (1999).

Evaluating Richman, Berenbaum's "unclean hands" defense in the most generous light, at best, Richman, Berenbaum have attempted to assert a defense based on waiver or estoppel. Such defense is also an affirmative defense which, as stated, should be precluded from consideration at this late stage in the litigation. Notwithstanding, Carolina submits that Pennsylvania courts have clearly defined an insurer's duties to its insured with regard to the preservation of its coverage defenses. As Carolina has fully complied with Pennsylvania law in this case, Richman, Berenbaum cannot circumvent the clear rulings of these courts to obtain relief under principles of "equity."

Under Pennsylvania law, the doctrine of waiver or estoppel cannot create insurance coverage where none exists. Thus, conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground of forfeiture, may not be waived by implication from the conduct or action of the insurer. *Wasilko v. Home Mut. Cas. Co.*, 210 Pa.Super. 222, 232 A.2d 60 (Pa.Super. 1967); *Pizzini v. American Int'l Specialty Lines Ins. Co.*, 210 F.Supp. 658, 674-75 (E.D.Pa. 2002).

---

therefore, is improperly asserted in the brief.

Regardless, even if the statement were admissible, such conduct would not rise to the level of bad faith or moral iniquity sufficient to support a "clean hands" defense, Richman, Berenbaum themselves have had over a year to obtain Klugman's testimony, prior to his purported incapacity in February of 2003, and Richman, Berenbaum does not assert that Carolina took any action to prevent Richman, Berenbaum from doing so.
.

As to estoppel, there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon. *Wasilko,* at 328; *Pizzini* at 675.  Thus, when seeking to estop an insurer from withdrawing from a case, the burden rests on the party asserting an estoppel to establish the defense by clear, precise and unequivocal evidence. *Merchants Mut. Ins. Co. v. Artis*, 907 F.Supp. 886, 891 (E.D.Pa. 1995). Courts may apply an estoppel only where there is actual prejudice, such as when the insurer's failure to assert all possible defense in a reservation of rights letter causes the insured to act to his detriment in reliance therein.  *Id.* at 891    The material facts on this issue are also indisputed and/or admitted by Richman, Berenbaum.   Carolina first received notice of the underlying Klugman claim in August of 2000.   Upon receipt of the complaint, Carolina agreed to defend Richman, Berenbaum, subject to a reservation of rights.  *Carolina Counterclaim, &16*. Subsequently, Carolina supplemented its prior reservation of rights, and requested an explanation and/or information from the Berenbaum Firm regarding its apparent prior knowledge of the suit.  *Carolina Counterclaim, &18*. Subsequently, in February of 2002, Carolina reviewed documents provided by the Insured, and first discovered the notice of potential claim letter. *Carolina Counterclaim, &18*.  At no time did  Richman, Berenbaum object to Carolina's continued provision of a defense under reservation of rights, nor did Richman, Berenbaum advise Carolina of any facts or other defenses to the coverage inquiry.  *Undisputed.*  To date, Carolina has continued to pay the costs of Richman, Berenbaum's defense, subject to its prior reservation of rights. *Undisputed.*

On April 17, 2002, Richman, Berenbaum filed this action, seeking a declaration that

Carolina is obligated to defend and indemnify it for the Klugman claim. On May 30, 2003, Carolina filed its answer and counterclaim, seeking a declaration of the parties respective rights and obligations with respect to the Klugman claim. In response, Richman, Berenbaum failed to answer the counterclaim, or assert any affirmative defenses. In fact, apart from filing an unsuccessful motion to remand, Richman, Berenbaum took no action in this litigation. Richman, Berenbaum did not serve its mandatory disclosures under Fed.R.Civ.P. 26, nor did Richman, Berenbaum conduct any discovery.

Accordingly, prior to April 11, 2003, Carolina was unaware that Richman, Berenbaum were intending to assert that Klugman, or any other party, advised Cook that Klugman did not intend to make a claim. Moreover, despite Richman, Berenbaum's assertion that Carolina should have deposed Klugman, Richman, Berenbaum apparently did not attempt to obtain Klugman's testimony at any point. According to the documents submitted by Richman, Berenbaum, Klugman's wife first moved to substitute as party plaintiff on February 6, 2003. *See Richman, Berenbaum Exhibit C.*

Based upon these facts, Richman, Berenbaum cannot support a claim of waiver of estoppel as a matter of law. Richman, Berenbaum was on notice from the very beginning that Carolina was asserting defenses to coverage, and the letter contained a general statement that Carolina was reserving all of its rights under the policy. *See Artis; Pizzini*. It was Richman, Berenbaum, and not Carolina, that failed to provide Carolina with a copy of the Notice of Potential Claim Letter Cook received from Klugman, which prevented Carolina from realizing that Cook had received it. Further, once notified of Carolina's reservation of rights letter, it is undisputed that Richman, Berenbaum did not object to Carolina's continued provision of a

defense, as evidenced by the lack of any testimony or other documentary evidence in this regard.

Further, Richman, Berenbaum have not and cannot provide sufficient evidence to demonstrate any actual prejudice. *See Artis*. Richman, Berenbaum have not asserted, nor advanced any evidence to support an assertion that their defense has been anything other than competent and vigorous. Richman, Berenbaum may not rely upon bare assertions, conclusory allegations or suspicions, but must set forth specific facts demonstrating that there is a genuinely disputed factual issue for trial. *Wheeler*, 24 F.Supp.2d at 477. *See also Nationwide Mut. Ins. Co. v. Budd-Baldwin*, 947 F.2d 1098, 1106 (3rd Cir. 1991) (insured bears burden of proving entitlement to benefits under an estoppel theory and of demonstrating at summary judgment stage that she [or he] has marshaled the facts necessary to support recovery on this theory).

Richman, Berenbaum attempts to argue only that their defense of *this litigation* has somehow been prejudiced B an assertion that is completely unsupported by the evidence. What is supported by the evidence is that Richman, Berenbaum have been on notice of Carolina's coverage position for over a year, and have enjoyed the continued benefit of a free defense B all while completely failing to prosecute or defend this declaratory judgment action. If Richman, Berenbaum have failed to previously obtain Klugman's testimony to support their present claim that he advised Richman, Berenbaum that he would not sue, such failure is attributable to Richman, Berenbaum, and not to Carolina.

Moreover, regardless, as fully explained *supra*, Klugman's testimony is irrelevant to Richman, Berenbaum's defense of this action, because Klugman's alleged intentions, or statements to Richman, Berenbaum could not serve to negate Richman, Berenbaum's objective knowledge of Klugman's potential claim against them. Thus, even if Richman, Berenbaum had

obtained testimony from Klugman to support the affidavits submitted by Cook, and by Klugman's counsel, Carolina submits that such testimony would not serve to defeat Carolina's entitlement to judgment. Therefore, Richman, Berenbaum's defense of this action could not have been prejudiced by any conduct on Carolina's part, and Carolina is entitled to judgment as a matter of law.

### III.   CONCLUSION

For the foregoing reasons, and those explained in Carolina's Memorandum of Law In Support of Carolina's Motion for Summary Judgment, Carolina Casualty Insurance Company respectfully requests that this court enter summary judgment in its favor and against Richman, Berenbaum & Associates, P.C., Charles I. Richman, Esq., Blake L. Berenbaum, Esq., and Ellis Cook, Esq., and further, that this court award any further relief that it deems just under the circumstances.

Respectfully submitted:

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
Attorneys for Defendant, Carolina Casualty Ins. Co.


BY:_____
      STEVEN J. POLANSKY, ESQUIRE



Steven J. Polansky, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East, Suite 300
Cherry Hill, New Jersey 08002

1845 Walnut Street
Philadelphia, Pennsylvania  19103-4797
856-414-6000

Jeffrey A. Goldwater, Esq.
Michelle M. Bracke, Esq.
BOLLINGER, RUBERRY & GARVEY
500 West Madison Street, Suite 2300
Chicago, Illinois 60661-2511
(312) 466-8000


\06_A\LIAB\SZP\LLPG\537274\SZP\03008\00101

## CERTIFICATE OF SERVICE

      I, Steven J. Polansky, Esquire, do hereby certify that a true and correct copy of Carolina's Reply To Plaintiff's Response To Carolina's Motion For Summary Judgment was served upon all parties by first class mail on April 21, 2003 at the following addressees:

Walter Weir, Jr., Esquire
WEIR & PARTNERS, LLP
The Widener Building, Suite 500
1339 Chestnut Street
Philadelphia, PA  19107


Lawrence T. Hoyle, Jr., Esquire
Jan Fink Call, Esquire
HOYLE, MORRIS & KERR LLP
One Liberty Place, Suite 4900
1650 Market Street
Philadelphia, PA  19103

Ellis Cook, Esquire
RICHMAN BERENBAUM & ASSOCIATES LLC
2200 Walnut Street
Philadelphia, PA  19103

                                                              _____
                                                              STEVEN J. POLANSKY
                                                              Attorney for Plaintiff
                                                              Richman, Berenbaum &
                                                              Associates, L.L.C.

Dated: